163 So.2d 377 (1964)
Charles WINFREE et al.
v.
CONSOLIDATED UNDERWRITERS.
No. 1118.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1964.
Rehearing Denied May 13, 1964.
Writ Granted June 30, 1964.
*378 Hall, Raggio & Farrar, by R. W. Farrar, Jr., Lake Charles, for defendant-appellant.
Nathan A. Cormie & Assoc., by Richard Cappell, Lake Charles, for plaintiff-appellee.
Before FRUGÉ, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for damages arising out of a rear end collision. A jury in the district court held for the plaintiffs. The defendant appealed. The sole issue is the quantum of damages awarded to each plaintiff.
The accident occurred on April 4, 1962. Charles J. Winfree and his then fiancee, Miss Lynn Tullos, whom he later married, were stopped at a red light in the city of Lake Charles when they were struck from the rear by a vehicle driven by the defendant's insured. The blow caused only $173.75 in damages to Winfree's automobile but it was sufficient to break the rear bumper guards. Both Mr. Winfree and Miss Tullos suffered whiplash injuries.
Mr. Winfree did not seek medical attention until five days after the accident. On April 9, 1962 he consulted Dr. Fritz Lacour, a general practitioner, complaining of soreness in his neck and headaches. Dr. Lacour found no muscle spasm or other objective symptoms but he did diagnose a whiplash injury for which he prescribed conservative treatment consisting of muscle relaxants and medication for pain. This type of treatment was continued for about three weeks until April 28, 1962, on which date it was discovered that Winfree had fever. Dr. Lacour, being concerned about a possible complication from the neck injury, hospitalized Mr. Winfree for observation and treatment. However, while in the hospital it was determined that the fever was caused by a virus infection unrelated to the injury. The virus was treated and cured with antibiotics.
While in the hospital Winfree was examined by Dr. George P. Schneider, a specialist in orthopedics, who found no muscle spasm or other objective symptoms of a whiplash injury except that he interpreted an X-ray to show a slight increase of the cervical curve. From this he diagnosed a moderate whiplash injury with a prognosis of full recovery in five to eight weeks under physiotherapy. Corroborating Dr. Schneider's opinion as to the minimal nature of the injury is the testimony of Dr. Elwyn Cavin, the radiologist who took the X-rays in the hospital. He interpreted the X-rays as showing no abnormality whatever in the cervical spine.
*379 Mr. Winfree received several physiotherapy treatments while in the hospital. He was discharged on May 5, 1962, after a total stay of seven days, and thereafter continued physiotherapy for a period of about two months, after which he returned to work and lost no more time from his employment.
Mr. Winfree remained under the care of Dr. Lacour until July 13, 1962. Winfree and Miss Tullos were married on September 15, 1962. However, in the early part of January, 1963, Winfree again complained of pain and headaches, so Dr. Lacour referred him to Dr. Robert C. L. Robertson, a neurosurgeon in Houston, Texas. Dr. Robertson found no muscle spasm or other objective symptoms except that his X-rays showed a "minimal" abnormality of the cervical curve which he interpreted as showing a minimal residual of the whiplash injury. Dr. Robertson recommended further physiotherapy which was actually continued until March 3, 1963, a period of eleven months after the date of the accident.
Further evidence of the minimal or moderate nature of the injury is the testimony of Dr. Norman Morin, a specialist in orthopedics of Lake Charles, who examined Mr. Winfree on January 15, 1963 and expressed the opinion that the X-rays taken on that date showed no abnormality in the cervical curve. Dr. Morin, like the other medical experts, found no muscle spasm or other objective symptoms. He concluded Winfree had fully recovered.
Viewed in the light most favorable to Mr. Winfree, we see that he suffered a moderate whiplash injury which never required any more than conservative treatment with muscle relaxants, pain drugs and physiotherapy. The pain was not initially nor subsequently of sufficient severity to require more drastic treatment such as traction or a cervical collar. The seven days hospitalization was not causally related to the injury but was required by a virus infection. The duration of the residuals was eleven months.
The jury awarded Mr. Winfree $8,795.75, of which at least $8,000 must be calculated as being for pain, suffering and disability. It is our opinion that this award is manifestly excessive and that the jury abused its discretion in making such an award which is out of all proportion with previous awards for similar injuries.
We are of course fully aware of the recent case of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, in which our Supreme Court enjoined the appellate courts from over emphasizing uniformity of awards. The court cites LSA-C.C. Art. 1934(3) for the proposition that "much discretion must be left to the judge or jury" in the assessment of damages. However, the court also quotes with approval from White v. Robbins, 153 So.2d 165 (3rd Cir.App.1963) the rule that "It is true that awards made should not be all out of proportion with previous awards made for somewhat similar injuries."
We believe that this award of $8,000 to Mr. Winfree for pain, suffering and disability is all out of proportion with previous awards for similar injuries. The defendant cites Cassreino v. Brown, 144 So.2d 608 (4th Cir.App.1962) which categorizes awards for whiplash injuries as follows:
"Without pretending to make a detailed analysis of the innumerable whiplash injury cases, we think that whiplash awards fall into approximately three main groups:
"(1) Awards in excess of $5000 are common for those producing permanent disability or severe pain of prolonged duration. See, e. g.: Self v. Johnson, La.App. 3 Cir., 124 So.2d 324 (9,237.50); Dillon v. Pope, La.App. 1 Cir., 110 So.2d 229 ($5000); Bartholomaus v. H. G. Hill Stores, Inc., La. App. 4 Cir., 97 So.2d 82 ($6000); Baker v. U.S. Fire Ins. Co., La.App. 1 Cir., 89 So.2d 405 ($5,600).
"(2) Awards in the area of $2500-$3500 are common for those producing *380 severe initial pain and with however only a short period of residual discomfort, or for those producing less severe pain but a relatively long period (e. g., a year or two) of residual discomfort or disability. See, e. g.: Ford v. State Farm Mut. Auto. Ins. Co., La. App. 2 Cir., 139 So.2d 798 ($3,000); Hilton v. Bankers Fire and Marine Ins. Co., La.App. 3 Cir., 134 So.2d 82 ($3,000); Landry v. Southern Farm Bureau Cas. Ins. Co., La.App. 3 Cir., 125 So.2d 474 ($3500); Frass v. Marquette Cas. Co., La.App. 4 Cir., 125 So.2d 174 ($2,500); Downs v. Hartford Accident and Ins. Indemnity Co., La.App. 2 Cir., 116 So.2d 712 ($3,000).
"(3) Awards in lower amounts for whiplash injuries producing moderate or slight pain, which are cured without residual in a matter of weeks. Doyle v. McMahon, La.App. 4 Cir., 136 So. 2d 89 ($2,000); Townsend v. Maniscalco, La.App. 2 Cir., 128 So.2d 906 ($1,500); Elder v. Travelers Ins. Co., La. App. 1 Cir., 125 So.2d 694 ($750); Degeyter v. Trahan, La.App. 1 Cir., 113 So.2d 808 ($1,150, involving minor or moderate pain and complete recovery within two months)."
Under the above quoted general rule of thumb, and the cases cited therein, it is apparent that Mr. Winfree's injury falls into the second category, i. e., it did not cause severe pain requiring traction, braces or hospitalization and it lasted only about one year. Later cases in this category are: Doyle v. Central Mutual Ins. Co., 139 So. 2d 766 (3rd Cir.App.1962) which awarded $2,000; Hilton v. Bankers Fire & Marine Ins. Co., 134 So.2d 82 (3rd Cir.App.1961) which awarded $3,000; Doyle v. McMahon, 136 So.2d 89 (4th Cir.App.1962) which awarded $2,000; Ford v. State Farm Mutual Automobile Ins. Co., 139 So.2d 798 (2nd Cir.App.1962) which awarded $3,000.
From the above cases it can be seen that the award of $8,000 to Mr. Winfree is over twice as much as awards which have been made for similar injuries. We deem this to be "all out of proportion with previous awards. * * *" We think the award to Mr. Winfree must be reduced to the sum of $3,000.
Turning now to a consideration of the injuries to Mrs. Lynn Tullos Winfree we note at the outset that she was having emotional problems of some kind before the accident and had been seen by a psychiatrist on ten occasions. The day after the accident she was examined by Dr. Charles V. Hatchette, a specialist in orthopedics, who found no objective symptoms whatever and who interpreted the X-ray as negative for abnormality. However, Dr. Hatchette was of the opinion that she had suffered "some stretching of the neck muscles" and that due to her nervous condition her complaints were exaggerated. He prescribed and gave three or four physiotherapy treatments. Thereafter Mrs. Winfree took several more such treatments from a nurse at the plant where she worked as a typist. Mrs. Winfree lost only one day from work and that was to go see Dr. Hatchette. This doctor was clearly of the opinion that her principal trouble was nervousness and he didn't know whether she was more nervous before the accident or after. In this connection Mrs. Winfree testified that although she had seen the psychiatrist ten times before the accident she only saw him one time after the accident. This would indicate that her emotional problem was not greatly aggravated by the injury.
As stated above, the accident occurred on April 4, 1962. Mrs. Winfree saw Dr. Hatchette for the last time on July 16, 1962 at which time he could find no residuals. Mrs. Winfree was married in September and soon thereafter became pregnant. She also went with her husband on January 4, 1963 for examination by Dr. Robert C. L. Robertson in Houston, Texas. Dr. Robertson found no muscle spasm or other objective symptoms except he thought the X-ray showed a slight abnormality of the cervical curve. However, he concluded this was due *381 more to tension than to any residual effect of the accident. He prescribed physiotherapy.
Mrs. Winfree was examined by Dr. Norman Morin, an orthopedist, on February 6,1963 and he found absolutely no residuals.
Under these circumstances we are of the opinion that Mrs. Winfree suffered as a result of the accident only slight pain, which was cured without residuals in a few months. Her injuries fall within category number 3 as quoted above from Cassreino v. Brown, supra, in which the awards range from about $1,000 to $2,000. It is our opinion that an award of $1,500 to Mrs. Winfree is appropriate under the circumstances.
On appeal defendant contends that the bills of Dr. Robert C. L. Robertson and Drs. Burge, Windrow and McIntyre should be disallowed because the examinations by these doctors were for purposes of testifying at the trial only and were not connected with any treatment of Mr. or Mrs. Winfree. We are of the opinion that the record shows that the services rendered by these doctors were for treatment and that these bills are recoverable as medical expense for treatment.
For the reasons assigned the judgment appealed is amended so as to reduce the award to Mr. Charles J. Winfree to the sum of $3,795.75, and so as to reduce the award to Mrs. Lynn Tullos Winfree to $1,585. As thus amended the judgment is affirmed. All costs of this appeal are assessed against the plaintiffs.
Amended and affirmed.
FRUGÉ, Judge (dissents).
I respectfully dissent from the decision of the majority in reducing the award made by the trial court. It is my opinion that the trial court did not abuse its great discretion in computing the award.
In Ballard v. National Indemnity Co., La. App. (3rd Cir.), 159 So.2d 763, and its companion case, Craft v. National Indemnity Co. of Omaha, Nebraska, La.App. (3rd Cir.), 159 So.2d 770, this Court also lowered awards granted by a trial court for whiplash injuries. I dissented in those cases and pointed out that under the recent ruling of the Supreme Court in Gaspard v. LeMaire (On Rehearing), 245 La. 239, 158 So.2d 149, the Supreme Court has clearly established a new policy for appellate courts in reviewing awards made by trial courts. This policy is that the trial judge or jury has great discretion in determining the amount of the award and appellate courts should overturn these awards only when this great discretion has been abused. Prior cases should be consulted only as a guide to determine whether or not this great discretion has been abused. Writs of certiorari have been granted by the Supreme Court in both the Ballard and Craft cases.
Gaspard v. LeMaire, supra, is a decision based on economic realities. The value of the dollar has been steadily decreasing over the past years. What may have been an appropriate amount for an award for a particular injury in the pre-inflation period, the 1940's or the 1950's, would not be an appropriate amount in the 1960's. One cannot buy as much with a dollar today as he could in decades past. This principle is embodied in the Supreme Court's recent opinion in Gaspard v. LeMaire, supra.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents and will assign written reasons. See 164 So.2d 183.
FRUGÉ, J., dissents on same ground in dissent on the original.